IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAVELL ROBINSON, # K-54251,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 15-cv-00512-SMY |
| ) | |
| **SALVADOR A. GODINEZ,** ) | |
| **JULIS C. FLAGG, BRAD ROBERT,** ) | |
| **MAICAN, ARMEL A. GARCIA,** ) | |
| **BERTA HABBIE, MARK PHILLIPS,** ) | |
| **LIEUTENANT ROSE,** ) | |
| **LIEUTENANT McABEE,** ) | |
| **OFFICER BELCHER, B. RENSCHEN,** ) | |
| **OFFICER KORTE, JOSEPH JACKSON,** ) | |
| **DEBORAH S. ZELASKO, and** ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Lavell Robinson, an inmate who is currently incarcerated at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983. In the complaint, he claims that four correctional officers at Centralia Correctional Center ("Centralia") subjected him to the unauthorized use of excessive force on June 21, 2014. As a result, he sustained serious physical and emotional injuries. In an effort to cover up their misconduct, the officers issued Plaintiff two false disciplinary tickets that resulted in his punishment with sixty days in segregation. The grievances that Plaintiff filed to address these issues were improperly investigated and ultimately denied.

Plaintiff now sues the four correctional officers for violating his Eighth Amendment right to be free from cruel and unusual punishment. He sues these same four correctional officers for

assault, battery, and intentional infliction of emotional distress under Illinois state law. Finally, Plaintiff sues a total of fourteen defendants for conspiring to deprive him of his constitutional rights. Plaintiff seeks monetary damages and an order requiring all correctional officers employed by the Illinois Department of Corrections ("IDOC") to wear body cameras.

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Plaintiff's complaint survives preliminary review under this standard.

## The Complaint

While walking to Centralia's chow hall on June 21, 2014, Plaintiff moved from the back of one line to another (Doc. 1, p. 4). Noticing this movement, C/O Belcher ordered Plaintiff to step out of line, saying, "[Y]ou don't follow rules so f*cking good, you act like you're slow or f*cking retarded" (*Id.*). C/O Belcher then ordered Plaintiff to get back in line. Plaintiff complied with each of C/O Belcher's orders. While stepping back in line, however, Plaintiff said, "[Y]ou don't have to talk to me like that[.] [We're] both . . . men and show me respect like I show you" (*Id.*). C/O Belcher responded by stating, "I got your respect" (*Id.*). He then summoned Lieutenant Rose by radio.

As Lieutenant Rose exited the chow hall and approached Plaintiff, she ordered him to "cuff up." Plaintiff complied with the order. Lieutenant Rose then escorted Plaintiff, who was

cuffed behind his back, to the segregation unit. Once out of view of other officers and inmates, Lieutenant Rose made a radio call (Doc. 1, p. 5).

C/O Korte and C/O Jackson responded to the call. Both correctional officers grabbed Plaintiff's handcuffs and twisted them, forcing Plaintiff onto his knees. C/O Korte then grabbed Plaintiff around the neck and forced his face into the ground. C/O Jackson punched Plaintiff in the face repeatedly. Major Phillips arrived and placed all of his body weight on top of Plaintiff, threatening to "mush the sh*t out of [Plaintiff]" if he refused to get up and walk (*Id.*). Even after Plaintiff was pulled to his feet and began walking to segregation, the officers continued beating him (Doc. 1, p. 6). Lieutenant Rose observed the entire incident without intervening.

Once in segregation, Plaintiff was taken to the shower. C/O Jackson held Plaintiff down by his neck. Plaintiff asked for medical attention. Major Phillips denied the request and told Plaintiff that he would not receive medical care until he changed into segregation clothing. An hour later, Major Phillips and C/O Renschen escorted Plaintiff to the prison's health care unit ("HCU").

Nurse Habbie examined Plaintiff in the HCU. At the time, his blood pressure was high, and his face and head were swollen. She suspected a concussion and recommended that Plaintiff see a doctor as soon as possible. When Plaintiff also complained of pain in his face, back, shoulders, wrists, and neck, Nurse Habbie recommended that he ask the doctor for an x-ray. Nurse Habbie and Major Phillips denied Plaintiff's request for photographs of his injuries. The complaint sets forth no allegations regarding Plaintiff's subsequent care.

Following the events described above, Plaintiff was issued two false disciplinary tickets. The ticket issued by C/O Jackson falsely stated that Plaintiff tried to bite or spit on the officers as they escorted him to segregation (Doc. 1, p. 7). Plaintiff claims that the tickets were issued as

part of a concerted effort by the officers to cover up their misconduct. Although the complaint mentions very little about the disciplinary hearing, Plaintiff alleges that he was punished with sixty days in segregation.

Plaintiff filed five grievances to complain about the alleged staff assault. In a grievance dated June 22nd (Doc. 1-1, pp. 1-2), he described the staff assault. He expressed fear that C/O Korte and C/O Jackson would retaliate against him. He asked that the two correctional officers have no further contact with him. Counselor Zelasko spoke with Lieutenant Rose and Major Phillips about the grievance before concluding that it was baseless (Doc. 1, pp. 8-9). While the investigation was still under way, C/O Korte made contact with Plaintiff by approaching Plaintiff's cell and returning Plaintiff's grievance to him.

In the June 23rd grievance (Doc. 1-1, pp. 3-4), Plaintiff complained about this interaction with C/O Korte. Plaintiff again expressed fear of C/O Korte and C/O Jackson. He asked that they be stationed in another area of the prison, while Plaintiff was housed in segregation.

In the June 24th grievance (Doc. 1-1, pp. 5-6), Plaintiff complained about his June 23rd meeting with an internal affairs officer, Lieutenant McAbee (Doc. 1, pp. 8-9). In that meeting, Plaintiff asked the lieutenant to review video footage of the June 21st incident (Doc. 1, p. 9). He also requested a polygraph test. He claimed that both sources of information would support his version of the events.

Plaintiff filed two grievances on June 25th (Doc. 1-1, pp. 7-8). In one, Plaintiff complained that Nurse Habbie and Major Phillips denied his request for photographs. In the other, Plaintiff sought release from segregation because the disciplinary hearing addressed both disciplinary tickets while one was still under investigation (Doc. 1, p. 10).

In the complaint, Plaintiff sets forth five claims. He claims that Defendants conspired to deprive him of his constitutional rights ("Count 1" in complaint). He also claims that Defendants Rose, Korte, Jackson, and Phillips used excessive force against him on June 21, 2014, in violation of the Eighth Amendment ("Count 2" in complaint). He asserts Illinois state law claims against these same defendants for assault ("Count 3" in complaint), battery ("Count 4" in complaint), and intentional infliction of emotional distress ("Count 5" in complaint).

## Discussion

After reviewing the allegations in the complaint, the Court finds it appropriate to organize Plaintiff's *pro se* pleading into eight separate counts that expand upon the five set forth in the complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of the counts and discussion of the same do not constitute an opinion as to their merit.

**Count 1:** Defendants Korte, Jackson, and Phillips used excessive force against Plaintiff on June 21, 2014, in violation of the Eighth Amendment (Doc. 1, p. 13) ("Count 2" in complaint);

**Count 2:** Defendant Rose failed to protect Plaintiff from the unauthorized use of excessive force by Defendants Korte, Jackson, and Phillips on June 21, 2014, in violation of the Eighth Amendment;

**Count 3:** Defendants Rose, Korte, Phillips, and Jackson exhibited deliberate indifference to Plaintiff's serious medical needs on June 21, 2014, in violation of the Eighth Amendment;

**Count 4:** Defendants conspired to deprive Plaintiff of his constitutional rights (Doc. 1, p. 12) ("Count 1" in complaint);

**Count 5:** Defendants deprived Plaintiff of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment, when punishing him with sixty days in segregation for two false disciplinary tickets;

**Count 6:** Defendants mishandled or failed to properly investigate Plaintiff's grievances, in violation of the Fourteenth Amendment;

**Count 7:**    Defendants Rose, Korte, Jackson, and Phillips are liable under Illinois law for assault and battery of Plaintiff (Doc. 1, pp. 14-16) ("Counts 3 and 4" in complaint); and

**Count 8:**    Defendants Rose, Korte, Jackson, and Phillips' actions resulted in the intentional infliction of emotional distress under Illinois law (Doc. 1, pp. 16-17) ("Count 5" in complaint).

Plaintiff shall be allowed to proceed with Counts 1, 2, 3, 4, 7, and 8 against those defendants set forth below. However, Counts 5 and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

## Claims Subject to Further Review

**Count 1 – Excessive Force**

The complaint states a viable Eighth Amendment excessive force claim (**Count 1**) against Defendants Korte, Jackson, and Phillips. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Force "qualifies as excessive for the purpose of Eighth Amendment and due process jurisprudence when it entails the 'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 667 (7th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted)). When force is applied by an officer in response to a threat, the pertinent inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (citation omitted). The complaint suggests that Defendants Korte, Jackson, and Phillips applied force maliciously and sadistically for the purpose of causing Plaintiff harm when

they beat him in the face, head, and body while he was handcuffed and complying with their orders. The excessive force claim against these individuals shall receive further review.

However, the complaint supports no such claim against the remaining defendants. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Plaintiff does not allege that anyone, other than Defendants Korte, Jackson, and Phillips, beat Plaintiff on June 21, 2014. Although Plaintiff also named Defendant Rose in connection with this claim, the complaint makes it clear that Defendant Rose simply observed the incident. Given this fact, the claim against Defendant Rose is more appropriately characterized as a failure to protect claim (see Count 2 below) and not an excessive force claim. Based on the foregoing discussion, **Count 1** shall proceed against Defendants Korte, Jackson, and Phillips. The claim shall be dismissed without prejudice against all other defendants.

**Count 2 – Failure to Protect**

Plaintiff shall be allowed to proceed with an Eighth Amendment failure to protect claim (**Count 2**) against Defendant Rose, who stood and observed Defendants Korte, Jackson, and Phillips beat Plaintiff on June 21, 2014. A plaintiff asserting a failure to protect claim must show that he was incarcerated under conditions posing a substantial risk of serious harm, and Defendants acted with "deliberate indifference" to that danger. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, yet failed to take any action. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996); *Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001).

The complaint clearly suggests that Defendant Rose knew that Plaintiff faced a substantial risk of attack. She stood watching three officers beat Plaintiff, while he was allegedly handcuffed, helpless, and screaming for mercy. Count 2 shall proceed against Defendant Rose.

However, the complaint states no failure to protect claim against any other defendant. This includes Defendant Belcher, who requested Defendant Rose's assistance when Plaintiff changed lines on June 21, 2014. No allegations suggest that Defendant Belcher knew that doing so would result in the unauthorized use of excessive force against Plaintiff. Further, the complaint describes the area where Plaintiff was beaten as being secluded from view by other inmates and staff, including Defendant Belcher. Given these allegations, the complaint supports no failure to protect claim against Defendant Belcher, or anyone else. **Count 2** shall proceed only against Defendant Rose and shall be dismissed without prejudice against all others.

**Count 3 – Deliberate Indifference to Serious Medical Needs**

The complaint states a viable Eighth Amendment claim for deliberate indifference to medical needs (**Count 3**) against Defendants Korte, Jackson, Phillips, and Rose. Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, "[t]he plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653

(7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'"  *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834).  Plaintiff is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it."  *Greeno*, 414 F.3d at 653.  The complaint suggests that Defendant Korte, Jackson, Phillips, and Rose knew that Plaintiff faced a substantial risk of harm when they beat him and then delayed medical treatment for his injuries.  Count 3 shall proceed against these defendants.

However, the complaint states no claim against the remaining defendants.  Only two other defendants were discussed in connection with Plaintiff's medical care.[1]  Defendant Renschen escorted Plaintiff to the HCU on June 21, 2014, but the complaint does not allege that this individual denied him access to adequate medical care or otherwise exhibited deliberate indifference toward his medical needs.  Defendant Habbie was the nurse who examined Plaintiff following the incident.  However, the complaint also does not allege that she denied Plaintiff adequate medical care; on the contrary, she referred him to the prison doctor for further evaluation and treatment, including screening for a possible concussion and x-rays for possible bone fractures.  Plaintiff takes issue with the fact that Defendant Habbie denied his request for photographs of the injuries, but this denial did not result in the deprivation of access to medical care or any other constitutional deprivation.  The Court finds no basis for an Eighth Amendment deliberate indifference to medical needs claim against anyone other than

---

[1] Although Wexford Health Sources, Inc. and Doctor Garcia were listed as defendants, the statement of claim includes no allegations against them.

Defendants Korte, Jackson, Phillips, and Rose. Accordingly, **Count 3** shall proceed against these defendants and shall be dismissed without prejudice against all other defendants.

**Count 4 – Conspiracy Claim**

The Court will allow Plaintiff to proceed with a civil conspiracy claim (**Count 4**) against Defendants Korte, Jackson, Phillips, and Rose at this early stage, but the complaint supports no claim against any other defendants. Conspiracy is not an independent basis of liability in Section 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). As discussed herein, the complaint does not support a viable claim against any other defendant. The surviving claims all relate to the staff assault of Plaintiff on June 21, 2014. Defendants Rose, Korte, Jackson, and Phillips are the only defendants who were involved in the assault and, by all indications, the ones who took affirmative steps to cover up the alleged misconduct.

Plaintiff's vague assertion that all defendants conspired to deprive him of his constitutional rights does not support a conspiracy claim. Allegations of a conspiracy have routinely been held to a higher pleading standard than other allegations. *See Geinosky v. City of Chicago*, 675 F.3d 743, 740 (7th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Under *Twombly*, the complaint must allege a "plausible account of a conspiracy." *Id.* Bare conclusions are not enough. Likewise, allegations suggesting that there is only a suspicion of a conspiracy do not suffice. The allegations of conspiracy against those individuals other than Defendants Korte, Jackson, Phillips, and Rose state no plausible account of a

conspiracy. Accordingly, **Count 4** shall proceed against Defendants Korte, Jackson, Phillips, and Rose and shall be dismissed without prejudice against all other defendants.

**Counts 7 & 8 – State Tort Claims**

Plaintiff shall be allowed to proceed with his Illinois state law claims for assault and battery (**Count 7**) and intentional infliction of emotional distress (**Count 8**) against Defendants Rose, Korte, Jackson, and Phillips. Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). The Court has original jurisdiction over this Section 1983 action. Because the tort claims and federal claims arise from the same facts, the district court also has supplemental jurisdiction over Plaintiff's related state law claims.

Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)). Given the allegations in the complaint, the Court cannot dismiss the assault and battery claim against Defendants Rose, Korte, Jackson, and Phillips at this early stage. **Count 7** shall receive further review as it pertains to these individuals. However, the claim shall be dismissed without prejudice against all other defendants.

The Court also cannot dismiss the Illinois state law claim for intentional infliction of

emotional distress against Defendants Rose, Korte, Jackson, and Phillips. Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). The complaint suggests that Defendants Rose, Korte, Jackson, and Phillips knew that beating Plaintiff while he was handcuffed could cause severe emotional distress and did, in fact, do so. At this early stage, the Court will allow Plaintiff to proceed with **Count 8** against Defendants Rose, Korte, Jackson, and Phillips. However, no allegations suggest that Plaintiff suffered from emotional distress as a result of the conduct of any other defendants. Therefore, Count 8 shall be dismissed without prejudice against everyone else.

## Claims Subject to Dismissal

**Count 5 – Deprivation of Liberty Interest Without Due Process of Law**

Plaintiff's argument that he was deprived of a protected liberty interest without due process of law (**Count 5**) when he was punished with sixty days in segregation on two false

disciplinary tickets is unavailing. An "inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Whether a protected liberty interest is implicated by Plaintiff's punishment depends on whether that confinement "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

The Seventh Circuit has held that "relatively short terms of segregation rarely give rise to a prisoner's liberty interest" in the absence of exceptionally harsh conditions. *Id.* at 743. For these relatively short periods, inquiry into the specific conditions of confinement is unnecessary. *See, e.g., Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005) (2 days); *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (60 days) *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated when considering prisoner's twelve-year sentence) (70 days).

Plaintiff's confinement in segregation does not give rise to a protected liberty interest that triggers due process concerns. The duration of his confinement (60 days) is so short that inquiry into the conditions of his confinement is unnecessary. Further, Plaintiff offers no complaints about the conditions he faced in segregation. Under the circumstances, **Count 5** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 6 – Mishandling of Grievances**

The complaint also articulates no viable claim against any of the defendants for mishandling or failing to properly investigate Plaintiff's grievances (**Count 6**). Plaintiff takes issue with Defendant Zelasko's and McAbee's investigation and denial of his grievances. He claims that Defendant Zelasko should not have accepted Defendant Rose's and Phillips' accounts of the June 21st incident. He challenges Defendant McAbee's failure to review video footage or administer a polygraph test during the investigation into the June 21st incident to confirm his version of the events.

Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Under controlling law, these allegations offer no basis for relief under the Due Process Clause of the Fourteenth Amendment. Accordingly, **Count 6** shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Parties Subject to Dismissal

Although the complaint addresses numerous claims, it focuses primarily on the conduct of four defendants, i.e., Defendants Rose, Korte, Jackson, and Phillips. Many other defendants are identified as parties to the action but are not included in the statement of claim. Plaintiff cannot proceed with any claims against them. These defendants include Wexford Health Sources, Inc. ("Wexford") (medical care provider), Salvador Godinez

(IDOC director), Julis Flagg (warden), Brad Robert (assistant warden), Maican (assistant warden), and Armel Garcia (doctor).

Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 555. Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.

Further, the fact that some of these defendants hold supervisory positions within the prison system does not obviate the need to include allegations against them in the statement of claim. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper*, 430 F.3d at 810 (citations omitted). The doctrine of *respondeat superior* does not apply to Section 1983 actions. *See, e.g., Kinslow*, 538 F.3d at 692. Therefore, a claim against a supervisory defendant does not arise simply because he or she occupies a leadership role within the prison system.

Liability may arise when senior officials are personally responsible for a policy, custom, or practice that causes a constitutional deprivation. *See, e.g.*, *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002)

(allegations that an agency's senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations suffice to demonstrate personal involvement). Still, this requires allegations in the statement of claim suggesting that a supervisory defendant was responsible for a specific policy, custom, or practice that deprived Plaintiff of his constitutional rights. The complaint includes no such allegation against these defendants. Defendants Wexford,[2] Godinez, Flagg, Robert, Maican, and Garcia appear to be involved in this action in name only. The Court cannot allow Plaintiff to proceed with any claims against them. These defendants shall be dismissed without prejudice.

Several other individuals are mentioned in connection with discrete incidents in the statement of claim, including Defendants Habbie, Belcher, Renschen, Zelasko, and McAbee. The complaint supports no claims against them for the reasons already set forth above, and they shall also be dismissed from this action without prejudice.

### Pending Motions

Plaintiff filed a motion for recruitment of counsel (Doc. 3), which shall be referred to United States Magistrate Judge **Philip M. Frazier** for a decision.

Plaintiff also filed a motion for service of process at government expense (Doc. 4), which is hereby **GRANTED in part**, with respect to Defendants **KORTE, JACKSON, PHILLIPS,** and **ROSE**, and **DENIED in part**, with respect to all other defendants.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 5** and **6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

---

[2] The Court deems it appropriate to dismiss Wexford at this early stage, even though the description of this party indicates that "Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Centralia, including Plaintiff" (Doc. 1, p. 2). The statement of claim does not mention Wexford or suggest that one of its rules, regulations, policies, or procedures resulted in a deprivation of Plaintiff's constitutional rights.

**IT IS ORDERED** that Defendants **GODINEZ, FLAGG, ROBERT, MAICAN, GARCIA, HABBIE, McABEE, BELCHER, RENSCHEN, ZELASKO,** and **WEXFORD HEALTH SOURCES, INC.** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 2, 3, 4, 7,** and **8,** the Clerk of Court shall prepare for Defendants **KORTE, JACKSON, PHILLIPS,** and **ROSE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or

counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on the motion for recruitment of counsel (Doc. 3).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 29, 2015**

<u>**s/ STACI M. YANDLE**</u>
**U.S. District Judge**